Filed 4/3/25  P. v. Tran CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101353 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F06726) |
| v. | |
| TIEN DUC TRAN, | |
| Defendant and Appellant. | |

In 1996, the prosecution charged defendant Tien Duc Tran with murdering two people.  The trial court did not instruct the jury on either the felony-murder rule or the natural and probable consequences doctrine.  The jury found defendant guilty of first degree murder of one victim and second degree murder of the other victim.

In 2022, defendant filed a petition seeking to have his second degree murder conviction vacated pursuant to Penal Code[1] section 1172.6. The trial court denied the petition, finding defendant failed to make a prima facie showing that he was entitled to relief under section 1172.6. On appeal, defendant contends that the trial court should not have denied the petition without holding an evidentiary hearing because " 'the record of conviction does not conclusively negate the possibility that the jury found [defendant] guilty of second-degree murder by imputing to him the implied malice of the actual killer, without finding that he personally acted "with knowledge of the danger to, and with conscious disregard for, human life." ' "

We conclude defendant has failed to establish a prima facie case for relief under section 1172.6. The record conclusively refutes his allegation that he could no longer be convicted of second degree murder "*because of* changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3), italics added.) Even assuming that the trial court did not clearly instruct defendant's jury on the intent elements of aiding and abetting implied malice murder, this asserted error was not affected by the recent changes to the homicide statutes. Accordingly, we affirm the denial of defendant's petition.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant's section 1172.6 petition alleges that, in 2015, he and a companion demanded protection money from Say Ngo, who was running a gambling operation. Ngo told defendant he was already paying protection money to Ri Nguyen, so defendant and his companion told Ngo to call them when Nguyen came to collect money. When Ngo called defendant and his companion to tell them Nguyen had come to collect money, they returned with a third companion, and all three fired guns at Nguyen, hitting him 11 times

---

[1]     Undesignated statutory references are to the Penal Code.

and killing him. One shot hit Ngo, who later died from the wound. Two others from the crowd of seven or eight individuals were also shot.

The prosecution charged defendant and one of his companions with murdering Nguyen and Ngo and assaulting the two other victims with firearms. The prosecution also alleged that defendant and his companion used handguns to commit the murders and committed multiple murders within the meaning of section 190.2, subdivision (a)(3). For both counts of murder, the trial court instructed the jury on the elements of murder, and, as relevant here, the elements of implied malice. Specifically, the court instructed the jury with CALJIC No. 8.10: "Every person who unlawfully kills a [human being] [with malice aforethought] is guilty of the crime of murder in violation of [s]ection 187 . . . . [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed. [¶] 2. The killing was unlawful, and [¶] 3. The killing [was done with malice aforethought]."

As to implied malice, the trial court instructed the jury with CALJIC No. 8.11: "[Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life]. [¶] [When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.]" Similarly, the court instructed the jury, using CALJIC No. 8.31, that second degree murder is "the unlawful killing of a human being when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."

The trial court also instructed the jury on the principles of aiding and abetting using CALJIC Nos. 3.00 and 3.01: "The persons concerned in the [commission] of a

3

crime who are regarded by law as principals in the crime thus [committed] and equally guilty thereof include:  [¶]  1. Those who directly and actively [commit] the act constituting the crime, or  [¶]  2. Those who aid and abet the [commission] of the crime." (CALJIC No. 3.00.)  "A person aids and abets the [commission] of a crime when he or she,  [¶]  (1) with knowledge of the unlawful purpose of the perpetrator and  [¶]  (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."  (CALJIC No. 3.01.)

The trial court also gave the following instructions about the specific intent required for second degree murder, using CALJIC No. 3.31:  "[T]here must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator.  Unless such specific intent exists the [crime] to which it relates is not committed.  [¶]  [The specific intent required is included in the definition[s] of the [crime[s]] set forth elsewhere in these instructions.]"

The trial court also instructed the jury as to the alleged multiple murder special circumstance, based on CALJIC No. 8.80.1:  "If you find a defendant in this case guilty of one murder in the first degree and one murder in the first or second degree, you must then determine if the following special circumstance is true or not true:  [¶]  That the defendant committed multiple murders:  at least one murder in the first degree and one additional murder in the first or second degree.  [¶]  . . .  [¶]  If you are satisfied beyond a reasonable doubt that a defendant actually killed both victims, you need not find that that defendant intended to kill in order to find the special circumstance to be true.  [¶]  If you find that a defendant was not the actual killer of both victims, or if you are unable to decide whether that defendant was the actual killer of both victims or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill

4

aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of a murder in the first or second degree."

The court did not instruct the jury on either the felony-murder rule or the natural and probable consequences doctrine.

The jury found defendant guilty of first degree murder of Nguyen, second degree murder of Ngo, and assaulting the other two victims with a firearm. The jury also found true allegations that defendant used a firearm in the commission of the offenses and committed multiple murders.

In 2022, defendant filed a petition seeking to have his second degree murder conviction vacated pursuant to section 1172.6. His petition alleged that the jury instructions given at his trial allowed the jury to find that defendant aided and abetted an implied malice murder without necessarily finding defendant himself acted with the requisite mental state for that theory of murder liability. Defendant argued that this ambiguity in the instructions permitted the jury to impute to him the implied malice of the actual killer, thus requiring an evidentiary hearing to determine his eligibility for relief under section 1172.6.

The prosecution offered two contentions in response. First, because the jury found true the multiple-murder special-circumstance allegation, it must have found that defendant either killed Ngo or intended to kill Ngo, precluding relief under section 1172.6. Second, any error by failing to instruct the jury on the intent elements of aiding and abetting implied malice murder was unaffected by the changes the Legislature made to the homicide statutes in 2019, therefore the record conclusively refutes defendant's allegation that he " ' "could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019." ' " (Quoting *People v. Curiel* (2023) 15 Cal.5th 433, 450 (*Curiel*).)

The trial court denied the petition, reasoning that the combination of instructions given to the jury and the lack of any instruction on the natural and probable consequences

doctrine ensured that the jury found defendant either actually killed Ngo or acted with the intent to kill. Accordingly, the trial court found defendant ineligible for relief as a matter of law.

Defendant appeals.

## DISCUSSION

Defendant argues that the trial court should not have denied his section 1172.6 petition without holding an evidentiary hearing because " 'the record of conviction does not conclusively negate the possibility that the jury found [defendant] guilty of second-degree murder by imputing to him the implied malice of the actual killer, without finding that he personally acted "with knowledge of the danger to, and with conscious disregard for, human life." ' " We disagree.

### I

*Legal Background*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015) "altered the substantive law of murder in two areas." (*Curiel*, *supra*, 15 Cal.5th at p. 448.) First, it "significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Strong* (2022) 13 Cal.5th 698, 707-708.) "Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her [or their] participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*Curiel*, at p. 449.)

6

Senate Bill 1437 also added a procedure, now codified in section 1172.6, " 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.)  " '[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A)), including that "[t]he [defendant] could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019," the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3)).' [Citation.]  'When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the [defendant] has made a prima facie case for relief." (§ 1172.6, subd. (c); [citation].)  If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  (See § 1172.6, subd. (c); [citation].)  If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." (§ 1172.6, subd. (c).)' " (*Curiel*, at p. 450.)

Section 1172.6, subdivision (a)(3)'s requirement that "[t]he [defendant] could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019" means that " 'the alleged inability to obtain such a conviction' [citation] depends in the first instance on the changes in murder liability for which Senate Bill 1437 is responsible." (*People v. Strong*, *supra*, 13 Cal.5th at p. 711.)  Defendant therefore must make a prima facie showing that the alleged inability of the prosecution to convict him of murder under current law depends on either the changes to the felony-murder rule in section 189, subdivision (e) or the bar on imputing malice "to a person based solely on his or her [or their] participation in a crime," in section 188, subdivision (a)(3).

## II

### *Analysis*

Defendant cannot make a prima facie showing that his second degree murder conviction meets the requirement of section 1172.6, subdivision (a)(3).  Here, the trial court did not instruct the jury on either theory of murder invalidated by the 2019 legislative changes made by Senate Bill 1437.[2]  Unlike the instructions for felony murder or the natural and probable consequences doctrine, the trial court instructed the jury that proof of murder required proof of malice, either express or implied.  The court did not suggest that participating in or aiding and abetting a different crime could suffice in lieu of proving malice.  (Cf. CALJIC Nos. 3.02, 8.21-8.21.2, 8.26-8.27, 8.32-8.34 (6th ed. 1996) pp. 131-133, 392-398, 407-408, 413-417.)  Accordingly, the jury had no basis to impute malice based solely on defendant's participation in a crime.  Defendant identifies no theory of murder liability that allowed malice to be imputed in this way at the time of his trial, so he cannot show that he was convicted under a theory that has been affected or barred by Senate Bill 1437.  The record thus conclusively refutes defendant's allegation that he meets the requirement of section 1172.6, subdivision (a)(3) that he can no longer be convicted of second degree murder *because of* changes to section 188 or 189 made by Senate Bill 1437.

Having made this determination, we need not determine whether the trial court erred by failing to give a clear statement of the intent elements for aiding and abetting implied malice murder.  Defendant is not eligible for relief because Senate Bill 1437 did

---

[2]  This case is distinct from a case like *Curiel*, *supra*, 15 Cal.5th 433, where the trial court instructed the jury on a recently invalidated theory of murder and the prosecution tried to show, as a matter of issue preclusion, that the jury had not relied on the invalid theory, thereby "conclusively refut[ing] [the] [defendant]'s allegation that he . . . could not be convicted of murder under current law."  (*Id*. at pp. 463, 470-471; see also *People v. Patton* (2025) 17 Cal.5th 549, 565, fn. 8].)

not correct the claimed instructional ambiguity. To the contrary, our Supreme Court had made clear more than a decade before defendant's trial that, "[w]hen the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime [citation], the aider and abettor must share the specific intent of the perpetrator," which means the aider and abettor must "know[] the full extent of the perpetrator's criminal purpose and give[] aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) Thus, in order to "share the specific intent of the perpetrator" of implied malice murder (*ibid.*), defendant had to aid and abet "deliberately . . . with knowledge of the danger to, and with conscious disregard for, human life," as explained to the jury in this case using CALJIC No. 8.11. In other words, the error defendant complains of could not have been affected by Senate Bill 1437 because it was already recognized as legal error long before defendant's trial. (Cf. *People v. Strong*, *supra*, 13 Cal.5th at pp. 711-712 [holding that defendants with felony-murder special circumstances were eligible for relief under § 1172.6 because their liability for felony murder had been altered by Sen. Bill 1437, not just by two earlier Supreme Court decisions that "clarified the line between special circumstance murder liability and ordinary murder liability"].)

Defendant relies on *People v. Langi* (2022) 73 Cal.App.5th 972, 983, which held that CALJIC Nos. 3.01 and 8.31 were "inadequate as applied to the crime of second degree murder because [they] did not clarify that an accomplice must personally harbor that mental state of implied malice." The *Langi* court thus concluded that "the record of conviction [did] not conclusively negate the possibility that the jury found [the defendant] guilty of second degree murder by imputing to him the implied malice of the actual killer, without finding that he personally acted 'with knowledge of the danger to, and with conscious disregard for, human life.' " (*Langi*, at p. 984.)

9

But the *Langi* court, as later decisions have pointed out, "did not consider the language of section 1172.6, subdivision (a)(3) requiring that defendants show they can no longer be convicted of murder 'because of changes' made by Senate Bill . . . 1437." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936.) The closest the *Langi* court came to addressing the issue was acknowledging in a footnote that "Senate Bill . . . 1437 'did not . . . alter the law regarding the criminal liability of direct aiders and abettors of murder.' " (*People v. Langi*, *supra*, 73 Cal.App.5th at p. 982, fn. 10.) The *Langi* opinion therefore cannot aid defendant here. (*People v. Casper* (2004) 33 Cal.4th 38, 43 ["It is axiomatic that cases are not authority for propositions not considered"].)

Courts dealing with similar claims have also explained that allowing section 1172.6 petitions to reach back and address " 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction,' " would expand section 1172.6 beyond its apparent purpose. (*People v. Berry-Vierwinden*, *supra*, 97 Cal.App.5th at p. 936.) " 'Section 1172.6 does not create a right to a second appeal, and [the defendant] cannot use it to resurrect a claim that should have been raised in his[, her, or their] [direct] appeal.' ([Citation]; see also *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [§ 1172.6 'does not afford the [defendant] a new opportunity to raise claims of trial error'].)" (*Berry-Vierwinden*, at p. 936.) We agree with these courts that Senate Bill 1437 and section 1172.6 were not intended to require full evidentiary hearings to address routine instructional errors—that would have been erroneous at the time of trial—like the failure to clearly state the intent elements for aiding and abetting implied malice murder.

DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.


/s/
ROBIE, Acting P. J.


We concur:


/s/
RENNER, J.


/s/
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11